IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH PASSANTINO-MILLER, individually and as trustee of the Miller Family Trust, JAMES R. MILLER, individually and as trustee of the Miller Family Trust, and the MILLER FAMILY TRUST, on behalf of themselves, on behalf of the Classes, and on behalf of the general public, | ) ) ) ) ) ) ) ) ) ) ) |

2:12-cv-00420-GEB-DAD

<u>ORDER GRANTING AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS</u>

Plaintiffs,

v.

Wells Fargo Bank, N.A.,

Defendant.
_____

Defendant seeks dismissal of Plaintiffs' Second Amended Class Action Complaint ("Complaint") under Federal Rule of Civil Procedure ("Rule") 12(b)(6). The Complaint is comprised of a Truth-In-Lending Act ("TILA") claim and state law breach of contract, breach of the covenant of good faith and fair dealing, and California Business & Professions Code section 17200 claims. In essence, this putative class action concerns Plaintiffs' allegations that they obtained a home equity line of credit ("HELOC") secured by their residential property and were charged for lender-placed flood insurance in an amount exceeding their line of credit in violation of TILA and the terms of the Flood Insurance

1

Agreement that was executed in connection with the closing of their

HELOC. (Second Am. Compl. ¶¶ 1-4, 18, 25, ECF No. 38.)

## I. FACTUAL ALLEGATIONS

Plaintiffs allege in relevant part as follows:

16.  On August 11, 2005, Plaintiffs obtained a HELOC from WFFB, secured by an Open-End Deed of Trust ("Deed of Trust") on their residential property. The total available credit limit on this HELOC was $80,000. The HELOC further provided that the outstanding principal on the loan could never exceed $96,000. Wells Fargo is now the lender-in-interest to this HELOC as successor in interest to WFFB. Wells Fargo also services Plaintiffs' HELOC. The current principal balance of Plaintiffs' HELOC is approximately $78,000.

. . . .

18.  In conjunction with the closing of their HELOC with WFFB, Plaintiffs executed an Agreement to Provide Property/Flood Insurance ("Flood Insurance Agreement").

(Id. at ¶¶ 16-18.)

The Flood Insurance Agreement is an exhibit to the Complaint.[1]

It states in relevant part:

I understand that to provide protection from serious financial loss, should a loss occur, [Wells Fargo] requires the property securing my line of credit to be continuously covered at all times during the term of the line of credit as follows:

. . . .

*   with special flood insurance if [Wells Fargo] notifies me . . . that the Federal Emergency Management Agency (FEMA) has determined that such property is located in a flood hazard area. Special flood insurance must meet FEMA coverage requirements, and it must be in an amount equal to the lesser of the amount of

---

[1]   Material attached to the Second Amended Complaint may be considered in deciding this Rule 12(b)(6) dismissal motion. Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

the line of credit or the maximum insurance
available under the National Flood Insurance
Program.

. . . .

. . . . I understand that even if my property is
not located in a special flood hazard area at this
time or even if my community does not currently
participate in the federal flood insurance program,
that this may change. If my community later
participates or FEMA determines that my property is
in a special flood hazard area, I agree upon
receipt of notice from Wells Fargo Financial Bank
to obtain flood insurance within 45 days of notice.

Failure to obtain required insurance is an event of
default under the [HELOC]. I understand that
failure to provide such insurance gives [Wells
Fargo] the right . . . to purchase coverage for
[Wells Fargo] only and to add the premium to the
principal balance on which interest will be
charged. Insurance coverage obtained by [Wells
Fargo] will be much more expensive than coverage I
can obtain on my own. The coverage may also be less
as it will not include contents coverage or
liability coverage.

(Id., Ex. 2.)

Plaintiffs further allege:

19. WFFB did not require Plaintiffs to obtain
flood insurance when they closed their loan, and
WFFB Bank did not tell Plaintiffs that their
property was located in a flood zone.

20. On July 31, 2011, Wells Fargo sent
Plaintiffs a form letter entitled Notice of Flood
Insurance Requirement ("Requirement Notice"). The
Requirement Notice asserted that Plaintiffs were
required to purchase flood insurance on their
residential property and must provide Wells Fargo
with proof of such insurance within 45 days. The
Requirement Notice further mandated that Plaintiffs
were required to purchase a policy with coverage in
an amount at least equal to the lesser of:

• the replacement value of the building(s)
on [the] property, or

• the total of all liens on [the] property
(including the limit on a line of credit) or

• the maximum coverage available under the
National Flood Insurance Program.

The Requirement Notice was the first time Wells
Fargo informed Plaintiffs that they were allegedly
in a flood zone. The Requirement Notice also
asserted that Plaintiffs were required to purchase
more flood insurance than was required in the Flood
Insurance Agreement.

21.  The Requirement Notice further informed
Plaintiffs that: (1) if they did not provide proof
of insurance in 45 days, Wells Fargo would purchase
a flood insurance policy on their behalf; (2) the
policy may be more expensive than a policy that
Plaintiffs might obtain on their own; (3) the
policy would not protect Plaintiffs' personal
property; and (4) Wells Fargo would be the named
insured.

22.  On August 8, 2011, Plaintiffs sent Wells
Fargo a letter asserting that their property was
not in a flood zone. Plaintiffs attached previous
flood hazard determination reports from 1991 and
2000, each of which concluded that Plaintiffs'
property was not in a Special Flood Hazard Area
("SFHA").

. . . .

25.  On September 15, 2011, in spite of this
correspondence from Plaintiffs and in spite of
Wells Fargo's failure to previously assert that
Plaintiffs property was in a flood zone, Defendant
sent Plaintiffs a "Notice That Flood Insurance Has
Been Purchased" ("Purchase Notice"), and attached a
declarations page for the lender-placed flood
insurance policy ("Lender-Placed Policy") that had
been purchased. Despite the fact that the
outstanding balance on Plaintiffs' HELOC was only
approximately $77,885 at the time, Defendant
purchased a policy with a face value of $250,000.
The annual premium for this Lender-Placed Policy
was $2,250, and after purchasing this policy,
Defendant added $2,250.00 to Plaintiffs' principal
balance on the HELOC.

. . . .

27.  Plaintiffs did not want this insurance
and would not have purchased it on their own
accord. On October 2, 2011, Plaintiffs sent Wells
Fargo a certified letter demanding that Wells Fargo
remove the $2,250 flood insurance charge from their
line of credit. However, Wells Fargo refused to do
so.

28.   Wells Fargo charged Plaintiffs interest in the increased indebtedness caused by the flood insurance charge on their line of credit.

(Id. at ¶¶ 19-22, 25, 27-28 (citations omitted).)

## II. LEGAL STANDARD

Decision on Defendant's Rule 12(b)(6) dismissal motion requires determination of "whether the [C]omplaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the [C]omplaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Id. (citation and internal quotation marks omitted); see also Iqbal, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"(quoting Twombly, 550 U.S. at 555)).

**III. DISCUSSION**

**A.   TILA Claim**

Defendant seeks dismissal of Plaintiffs' TILA claim, which is premised upon three alleged violations of the statute's applicable regulations concerning open-ended credit transactions. Plaintiffs allege Defendant violated 12 C.F.R. § 226.5(c) "by misrepresenting to Plaintiffs . . . that they were required to purchase . . . flood insurance coverage in amounts greater than required upon origination of their HELOC[][,]" "12 C.F.R. § 226.5b(f)(3) by adversely changing the terms of the HELOC after origination without consent, and . . . 12 C.F.R. 226.9(c) by failing to provide proper notice . . . that Wells Fargo was amending the terms of [the] HELOC . . . agreement[]." (Second. Am. Compl. ¶¶ 45-47.)

The gravamen of Defendant's motion seeking dismissal of Plaintiffs' TILA claim is its argument that it "did not change the terms of [the Flood Insurance Agreement, r]ather, [the Federal Emergency Management Agency ("FEMA")'s] changing regulatory implementations themselves modified the language of that agreement[, and Defendant] cannot be sued for obeying the law." (Def.'s Mot. 12:6-8.) Specifically, Defendant argues:

> At the time Plaintiffs' loan was originated, FEMA mandated that secondary liens require insurance only to the amount of the lien itself, without taking senior loans into account. The current [National Flood Insurance Plan ("NFIP")] Standard Flood Insurance Policy, however, requires that all flood insurance losses are to be paid in the order of precedence of the mortgages on the property. As a result, FEMA's flood insurance requirements have changed. . . .
>
> As a result of this change in guidance, FEMA now requires that junior liens . . . obtain flood insurance at a level at least equal to the lesser of (a) the sum of all liens against the property, . . . or (c) the maximum amount of

coverage available under the NFIP for the
particular type of building on the property
(currently $250,000 for residential buildings).

Plaintiffs currently have two liens against
their property. They have the [HELOC loan] for
$80,000. Plaintiffs also have a loan that they took
out to refinance their property in 2003, the
principal sum of which is $347,894.51.

Because the sum of all liens on Plaintiffs'
property exceeds $250,000—the maximum amount of
coverage available under the NFIP . . . , the
lowest amount of the flood insurance on Plaintiffs'
property allowable by FEMA is $250,000 . . . .
[T]hat is the amount of flood insurance [Defendant]
placed for them.

Plaintiffs' construction of their Flood
Insurance Agreement essentially asks this Court to
interpret that Agreement in such a way as to render
its terms unlawful: it would require noncompliance
with FEMA and the [National Flood Insurance Act
("NFIA")].

(Id. at 10:23-11:27.) In support of this argument, Defendant relies upon

the Mandatory Purchase of Flood Insurance Guidelines published by FEMA

in 2007 and Interagency Questions and Answers Regarding Flood Insurance

published in 2008 and 2009. (Id. at 10:27-11:12.)

Plaintiffs dispute that federal law requires $250,000 in flood

insurance coverage be maintained on the property securing their HELOC.

(Pls.' Opp'n 4:23-5:3.) Plaintiffs contend, *inter alia*:

The legally relevant statement on the amount of
insurance is the regulation issued by the [Office
of the Comptroller of the Currency ("OCC")], which
requires insurance in an amount "at least equal to
the lesser of the outstanding principal balance of
the **designated** loan or the maximum limit of
coverage available for the particular type of
property under the Act." 12 C.F.R. § 22.3 (emphasis
added). Wells Fargo's argument that the "law"
modified the Flood Insurance Agreement fails
because no statement of law supports Wells Fargo's
increased flood insurance requirements.

(Id. at 13:13-19.) Plaintiffs further argue: "FEMA does not have any

responsibility for establishing the amount of flood insurance required under the NFIA[,]" and the referenced 2007 FEMA flood insurance guidelines and Interagency Questions and Answers "are not regulations and do not have the force or effect of law." (Id. at 5:4-10, 13:12-13.)

Defendant has shown neither that FEMA is authorized to promulgate guidelines concerning the amount of flood insurance coverage required under the NFIA, nor the weight required to be given to FEMA's 2007 guidelines or the referenced interagency Questions and Answers. Therefore Plaintiffs have stated a plausible claim under TILA. See Hofstetter v. Chase Home Fin., LLC, 751 F. Supp. 2d 1116, 1123-28 (N.D. Cal. 2010)(indicating a lender's decision to impose flood insurance in an amount greater than that required by the terms of the parties' loan agreement and that required by federal law "forms a plausible basis for [TILA] liability under 12 C.F.R. [§] 226.5b(f)(3)" and 12 C.F.R. [§] 226.9(c)); see also Gooden v. Suntrust Mortg., Inc., No. 2:11-cv-02595-JAM-DAD, 2012 WL 996513, at *7 (E.D. Cal. Mar. 23, 2012)(indicating allegations that Defendant force-placed flood insurance coverage in an amount that "exceeded coverage required under the NFIA and the [parties'] loan agreement" states a TILA claim).

For the stated reasons, Defendant's motion seeking dismissal of Plaintiffs' TILA claim is denied.

**B.    Breach of Contract / Breach of the Covenant of Good Faith & Fair Dealing Claims**

Defendant seeks dismissal of Plaintiffs' breach of contract and breach of the covenant of good faith and dealing claims, arguing, *inter alia*, that Plaintiffs have not alleged their performance of the Flood Insurance Agreement, which Defendant contends is an essential element of these claims. (Def.'s Mot. 12:18-22, 17:11-14.) Specifically,

Defendant argues:

> [The Flood Insurance Agreement required Plaintiffs]
> to purchase [flood] insurance if FEMA determined
> they were in a Flood Zone. FEMA determined they
> were in a Flood Zone[;] Plaintiffs did not purchase
> insurance. Therefore, Plaintiffs breached the
> agreement. Plaintiffs are not in a position to
> enforce the provisions of a contract that they
> themselves have already breached.

(Id. at 14:18-22.)

Plaintiffs counter that "Wells Fargo cannot make an unreasonable demand for flood insurance in the amount of $250,000, and then argue that Plaintiffs breached the contract by failing to meet this requirement . . . ." (Pls.' Opp'n 11:21-23.) Plaintiffs further argue that they "fulfilled their obligations by paying for the force-placed insurance," and by "accepting payment from them, Wells Fargo elected to treat the contract as still alive and viable and . . . has therefore waived any claim of breach by Plaintiffs." (Id. at 12:1-12.)

"It is hornbook law that the essential elements to be pleaded in an action for breach of contract are: (1) the contract; (2) plaintiff's performance of the contract or excuse for nonperformance; (3) defendants' breach; and (4) the resulting damage to plaintiff." Lortz v. Connell, 273 Cal. App. 2d 286, 290 (1969).

> A claim for breach of the implied covenant of good
> faith and fair dealing requires the same elements,
> except that instead of showing that defendant
> breached a contractual duty, the plaintiff must
> show, in essence, that defendant deprived the
> plaintiff of a benefit conferred by the contract in
> violation of the parties' expectations at the time
> of contracting.

Boland, Inc. v. Rolf C. Hagen (USA) Corp., 685 F. Supp. 2d 1094, 1101 (E.D. Cal. 2010).

Plaintiffs allege in support of their breach of contract claim that "at all relevant times, [they] complied with the terms of their contract with Defendant." (Second Am. Compl. ¶ 58.) However, this conclusory statement lacks sufficient factual content to be entitled "to the presumption of truth." <u>Chavez v. U.S.</u>, 683 F.3d 1102, 1108 (9th Cir. 2012)("[A] court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible."). For example, in response to Defendant's alleged notification that FEMA determined their property was in a flood zone, Plaintiffs allege only that they contacted Defendant to dispute whether the property was in fact in a flood zone. (<u>Id.</u> at ¶¶ 20-22.) Plaintiffs do not allege that they undertook any efforts to obtain flood insurance in any amount. Further, although Plaintiffs appear to argue in their Opposition that they were excused from obtaining flood insurance, they do not allege excuse in the Complaint. (<u>Id.</u> at ¶¶ 12-63.)

Since Plaintiffs' allegations are insufficient to state a breach of contract and/or breach of the covenant of good faith and fair dealing claim, these claims are dismissed.

**C.   California Business & Professions Code Section 17200**

Defendant also seeks dismissal of Plaintiffs' California Business & Professions Code section 17200 claim arguing that this claim is derivative of Plaintiffs' other claims, and "[b]ecause Plaintiffs other claims . . . all fail, . . . their derivative [section 17200] claim must fail as well." (Def.'s Mot. 19:9-12.)

Since Defendant has not prevailed on its motion to dismiss Plaintiffs' TILA claim, and Plaintiffs' section 17200 claim is premised in part on Defendant's alleged violation of TILA, Defendant has not shown that dismissal of Plaintiffs' section 17200 claim is warranted.

Therefore, this portion of Defendant's dismissal motion is denied.

### IV. CONCLUSION

For the stated reasons, Defendant's dismissal motion is granted and denied in part. The motion is granted as to Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing claims; the motion is denied as to Plaintiffs' TILA and section 17200 claims. Plaintiffs are granted fourteen (14) days from the date on which this order is filed to file a Third-Amended Complaint addressing the deficiencies of any dismissed claim.

Dated:  January 3, 2013

GARLAND E. BURRELL, JR.
Senior United States District Judge

11